# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 7, 2011

## KEVEN SCOTT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-01965      Paula Skahan, Judge**

---

**No. W2010-02515-CCA-R3-PC  - Filed November 22, 2011**

---

The Petitioner was convicted by a jury for possession of cocaine, possession of more than .5 grams of cocaine with the intent to deliver, and possession of marijuana.  These convictions were sustained on appeal.  The Petitioner subsequently filed for post-conviction relief, alleging ineffective assistance of counsel at trial.  Specifically, the Petitioner argues that his trial counsel performed ineffectively by failing to file a motion to suppress the evidence obtained during a police search.  Following an evidentiary hearing, the post-conviction court denied relief, and the Petitioner has appealed.   After a thorough review of the record, we conclude that the Petitioner has not met his burden of proving that he was prejudiced by his trial counsel's failure to file a motion to suppress.  Consequently, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of**
**the Criminal Court Affirmed**

JEFFREY S. BIVINS, delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

R. Todd Mosley, Memphis, Tennessee, for the appellant, Keven Scott.

Robert E. Cooper, Jr., Attorney General & Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; Doug Carriker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I.  Background Facts and Procedure

A Shelby County jury convicted Keven Scott[1] ("the Petitioner") of one count of simple possession of cocaine, a Class A misdemeanor; one count of possession of more than .5 grams of cocaine with the intent to deliver, a Class B felony; and one count of simple possession of marijuana, a Class A misdemeanor.[2]  The trial court merged the misdemeanor cocaine conviction into the felony cocaine conviction.  The Petitioner was sentenced as a Range II multiple offender to seventeen years on the cocaine conviction and three years on the marijuana conviction, to run concurrently. On appeal, this Court affirmed the Petitioner's convictions. See State v. Keven Scott, No. W2007-01636-CCA-R3-CD, 2008 WL 3892015 (Tenn. Crim. App. Aug. 20, 2008), perm. app. denied, (Tenn. Jan. 20, 2009).

On December 29, 2009, the Petitioner filed a *pro se* petition for post-conviction relief, which was amended by appointed counsel on April 8, 2010.  In the amended petition, the Petitioner asserted that he received ineffective assistance of counsel at trial.  The post-conviction court conducted an evidentiary hearing at which it heard testimony from the Petitioner and his trial counsel, and also received into evidence a copy of the transcript from both the Petitioner's trial and sentencing hearing.  After taking the matter under advisement, the post-conviction court entered an order denying post-conviction relief on November 15, 2010.  From this order, the Petitioner timely appeals.

On appeal, the Petitioner asserts that his trial counsel acted ineffectively by failing to file a motion to suppress the evidence obtained during a police search.[3]  After a careful review of the record provided by the Petitioner, we conclude that he has failed to prove that he was prejudiced by his trial counsel's failure to file a motion to suppress.

---

[1]At the post-conviction hearing, the Petitioner testified that his name is correctly spelled "Kevin Scott." However, we will use the spelling of the Petitioner's name from his petition for post-conviction relief and the original indictment in this case.

[2]The Petitioner had three prior convictions for possession of a controlled substance, which enhanced the conviction for possession of marijuana to a Class E felony instead of a misdemeanor.

[3]In his petition for post-conviction relief, the Petitioner alleged multiple theories of ineffective assistance of counsel; however, this is the only issue raised by the Petitioner on appeal. See Tenn. R. App. P. 13(b).

## A. Proof at Trial

In this Court's earlier opinion, we set out the following relevant facts concerning the arrest of the Petitioner, who is referred to below as "appellant":

At trial, Memphis City Police officer Justin Sheriff testified that at 4:00 p.m. on December 3, 2005, he was in his squad car, traveling north toward American Way. On his left, he saw a woman at a gas station "hysterically yelling" at him to pull over. Officer Sheriff parked at the gas station and asked the woman what was wrong. She pointed to the appellant. Officer Sheriff said that the appellant made eye contact with him and mouthed the words, "Oh, f[*]ck." The appellant "started to motion toward his pants," and Officer Sheriff, fearing the appellant was reaching for a weapon, drew his gun and pointed it at the appellant. Officer Sheriff ordered the appellant to put his hands on the wall of the gas station, and the appellant complied. Officer Sheriff holstered his gun and approached the appellant. He grabbed the appellant by the back of his belt in order to control him if he became aggressive. The appellant reached back, and Officer Sheriff thought the appellant was going to hit him. He placed the appellant on the ground and radioed for backup. While awaiting backup, Officer Sheriff performed a quick pat-down of the appellant to check for weapons and placed him in the back of the squad car.

After backup arrived, Officer Sheriff removed the appellant from the squad car and conducted a more thorough search. During the search, three small packages fell from the appellant's pants. Officer Sheriff later ascertained that the packages contained marijuana and cocaine. Officer Sheriff testified that he did not find any drug paraphernalia during the search. Officer Sheriff could not remember the amount of money the appellant had at the time of the search. After the search, the appellant was arrested.

Id. at *1 (footnotes omitted).

The Petitioner waived a preliminary hearing. Consequently, Officer Sheriff did not testify until trial. During direct examination, the State asked Officer Sheriff to describe the circumstances surrounding the Petitioner's search and arrest:

Q: So after you put him on the ground, what did you do?

A: Put handcuffs on him.

-3-

Q: And after you put handcuffs on him, what did you do at that point?

A: Radioed for a second and third car.

Q: When other officers arrived -- well, after you radioed for other officers, what did you do at that time?

A: I did a quick pat down for weapons before I stuck him in the car.

Q: Okay. You said you radioed for other officers. Did other officers arrive?

A: They did.

Q: And what happened when the other officers arrived?

A: For a more thorough search we got him back out of the car and we had searched him again.

Q: Okay. Who conducted that search?

A: I did.

Q: And could you please explain to me the process you go through for a search at that time.

A: I had told him to exit the squad car, put his hands on the trunk and spread his feet wide. Then I started to work from his left side to the right side of his body . . . .

Q: And what happened at that point?

A: At that point while he was spread over, his pants started to become bulging and three little packages had fallen out of his pants.

A drug lab technician testified that the contents of the packages discovered by Officer Sheriff tested positive for cocaine and marijuana. Officer Sheriff was questioned further on direct examination regarding the search and arrest:

Q: Okay. Officer, what's been marked as exhibit one [i.e., the packages containing cocaine and marijuana], you said it was on the ground and you picked it up.

A: Yes, sir.

Q: Tell the procedure that you went through after you picked it up.

A: I had hand[ed] them to my partner because I wasn't sure if there was anything else, so we continued searching.

Q: And did you find anything else during that search?

A: No, sir.

Q: Okay. After you concluded your search, what did you do?

A: We put him back in the squad car and we started the paperwork and because this is a felony, we have to call for a supervisor to sign our arrest tickets.

On cross-examination, trial counsel questioned Officer Sheriff regarding his search of the Petitioner:

Q: All right. Now, you testified today that the substance fell out of the defendant's pants?

A: Uh-huh. (Affirmative response.) What they do is they stick it in their crotch area. Based on my experience. And it's hard for us to dig up in there on a regular search. But as you pat them down and you shake them a couple of times in the pants area, and me grabbing the belt -- that's also another advantage -- it shakes up the pants[] area[,] the underwear area and it falls down.

Q: So, the affidavit is incorrect. You didn't find it in the crotch. You found it on the ground as you testified to?

A: Well, it was found on the ground after it fell out of his pants. I guess I would assume that it was in the crotch area?

Q: But your affidavit indicates you found them in his crotch, does it not?

A: Well, it says it was in the crotch, yes, on the affidavit.

Q: Now, I believe you say he complied at first. And then you said something about a wall. Would you repeat that for me?

A: Sure. Originally I had asked him to put his hands up against the wall.

Q: Assume the position, is that what that means?

A: More or less, yeah. I don't remember my technical term that I used.

Q: All right. That's my paraphrase, of course. And he complied with that?

A: Uh huh. (Affirmative response.)

Q: Okay. And did you find any weapons on Mr. Scott?

A: No, I did not.

The Petitioner did not testify at his trial.

### B. Proof at Post-Conviction Hearing

Transcripts from the Petitioner's trial and sentencing hearing were admitted into evidence at the post-conviction hearing. An affidavit of complaint and an arrest warrant were also admitted. The affidavit was prepared by Officer Sheriff following the Petitioner's arrest. It states that the alleged victim, the mother of the Petitioner's child, flagged down Officer Sheriff and told him that the Petitioner was inside the gas station "armed with a gun, threatening to hurt her[.]" The "[v]ictim stated that the couple had been arguing about custody . . . inside the store when [the Petitioner] grabbed her by the throat. While patting down suspect for transport, Officers found 3 baggies of cocaine . . . and 1 baggie of marijuana . . . in his crotch." The affidavit of complaint and arrest warrant state that the Petitioner was arrested for domestic assault, possession of a controlled substance, and possession of a controlled substance with intent to distribute. The domestic assault charge was *nol prossed* prior to trial.

-6-

The post-conviction court heard the testimony of only two witnesses – the Petitioner and trial counsel. Officer Sheriff did not testify at the post-conviction hearing, nor did any of the other police officers involved in the Petitioner's arrest.

At the post-conviction hearing, the Petitioner explained that he chose not to testify at his trial due to his prior criminal history, which included multiple felony and misdemeanor convictions. He acknowledged that, at the time he was taken into custody, he had an outstanding arrest warrant stemming from a failure to appear in General Sessions Court. The Petitioner's post-conviction counsel asked him to describe the circumstances surrounding the police search and arrest:

A: Well my baby mama flagged the police down and I guess she told him I had [a] gun and drugs. So when they searched me . . . they came inside the gas station with the gun drawed out. I ain't know they was talking to me at first because there was plenty [of] people in the store.

Q: Okay.

A: And they like, you, get against the counter. I get against the counter. They pat me down. They see I don't have no weapon. I'm like, what you patting me down for, what I do? So they grabbed me, you know what I'm saying, and took me outside and threw me on the ground and searched me again, like, where the gun at. I'm like I ain't got no gun, I don't know what you talking about, you know what I'm saying. So then they put me in the back of the police car. And they still talking to my baby mama. She telling them I guess when they see I ain't have no gun, she told them I had drugs, I was a drug dealer. I'm telling them I ain't no drug dealer, you know what I'm saying.

Q: Now did you hear what your child's mother was telling the police?

A: Yes, sir.

The Petitioner admitted that his recounting of the events surrounding the search differed from that in the affidavit of complaint and Officer Sheriff's testimony at trial. Specifically, the Petitioner acknowledged that Officer Sheriff did not state in his affidavit of complaint or in his trial testimony that the mother of the Petitioner's child told police that the Petitioner had drugs on his person or that he was a drug dealer. The Petitioner also acknowledged that he had waived his right to a preliminary hearing, and that, by doing so, trial counsel had been unable to question Officer Sheriff regarding the affidavit of complaint before trial. The Petitioner testified that he asked trial counsel before trial why no motion

to suppress had been filed but that trial counsel did not discuss the matter with him further. Because neither a preliminary hearing nor a suppression hearing was held, the first and only time that Officer Sheriff testified was at trial.

Trial counsel testified at the post-conviction hearing that he had been a licensed attorney since 1982 and had worked in the Shelby County Public Defender's Office since 1989, save for one year of leave to tend to an illness in his family. He speculated that he had participated in 100-125 trials during his career. Trial counsel testified that he did not file a motion to suppress the evidence recovered during the second search because he felt such a motion would be frivolous. While conceding that a successful motion to suppress would have likely defeated the State's case, trial counsel maintained that he had valid reasons for not filing such a motion. In support of his conclusion that a motion to suppress would be frivolous, trial counsel stated that the Petitioner was going to be arrested on either the domestic assault charge or the outstanding arrest warrants, and that the drugs would have been discovered during booking. Trial counsel also explained that, in his experience with the district attorney's office, when a defense attorney filed a frivolous motion to suppress, it would sometimes result in the revocation of a plea offer. Trial counsel stated that he was attempting to negotiate a better plea bargain for the Petitioner and that he was afraid such a plea offer would be revoked if he filed a motion to suppress.[4]

The post-conviction court took the matter under advisement and denied relief by order entered November 15, 2010. The post-conviction court found that trial counsel's decision not to file a motion to suppress had been a tactical one; thus, trial counsel's performance had not been ineffective. The post-conviction court also found that the Petitioner had not established that he had been prejudiced by trial counsel's failure to file a motion to suppress because "[t]rial counsel testified that he explained to Petitioner the doctrine of inevitable discovery and its application to the evidence obtained by Officer Sheriff."

---

[4]According to trial counsel, prior to his representation of the Petitioner, the Petitioner twice was offered a plea bargain of eleven months and twenty-nine days while his case was pending in general sessions. The Petitioner declined this offer because a conviction would violate his probation. Once his case was transferred to criminal court, the Petitioner also declined plea bargains of twelve, ten, and eight years. After the Petitioner's repeated rejections of plea offers, trial counsel requested that the Petitioner undergo a mental evaluation, the results of which indicated that the Petitioner was fully competent.

## II. Analysis

### A. Standard of Review

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is *de novo* with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[5] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Act. See Tenn. Code Ann. § 40-30-103 (2006); Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). The petitioner's failure to establish either prong by clear and

---

[5] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342, 83 S. Ct. 792, 794-95 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

convincing evidence is fatal to his or her claim of ineffective assistance of counsel. Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006). Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Finch v. State, 226 S.W.3d 307, 316 (Tenn. 2007) (citing Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004)).

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

> the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)).

When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell, 185 S.W.3d at 326 (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991).

We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)). Thus, "when counsel's choices are uninformed because of inadequate preparation, a defendant is denied the effective assistance of counsel." Hellard, 629 S.W.2d at 9 (quoting U.S. v. DeCoster, 487 F.2d 1197, 1201 (D.C. Cir. 1973)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

*C. Search and Seizure*

In his appellate brief, the Petitioner argues that trial counsel should have filed a motion to suppress the evidence obtained during the second search by Officer Sheriff. The State contends that the search was incident to a lawful arrest and also that the evidence would have been inevitably discovered.

When a defendant's person is searched, the constitutional protections are especially high. Both the Fourth Amendment to the United States Constitution, as well as article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. State v. Ingram, 331 S.W.3d 746, 754 (Tenn. 2011) (citing Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961)).[6] As our Supreme Court has stated, it is a "fundamental principle under our state and federal constitutions that a warrantless search is presumed invalid and any evidence discovered as a result is subject to suppression." Ingram, 331 S.W.3d at 754 (citing State v. Day, 263 S.W.3d 891, 901 (Tenn. 2008); State v. Berrios, 235 S.W.3d 99, 104 (Tenn. 2007)). Thus, when a search or seizure is determined to be illegal, the evidence obtained in that search or seizure is excluded from use by the prosecution. See Wong Sun v. U.S., 371 U.S. 471, 484-85, 83 S. Ct. 407, 416 (1963); State v. Huddleston, 924 S.W.2d 666, 674 (Tenn. 1996). This exclusionary rule "was designed to protect Fourth Amendment guarantees by deterring lawless searches, seizures, and arrests." Huddleston, 924 S.W.2d at 674.

---

[6]The Fourth Amendment is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Mapp, 367 U.S. at 655; Ingram, 331 S.W.3d at 754. The intent and purpose of article I, section 7 of the Tennessee Constitution is identical with the Fourth Amendment; however, our Supreme Court has noted previously that Tennessee's search and seizure case law has developed independently from, and extends greater protection than, federal law. See State v. Richards, 286 S.W.3d 873, 877-78 (Tenn. 2009).

There are several recognized exceptions to the rule against warrantless searches. Ingram, 331 S.W.3d at 755. Because a trial court must presume "that a warrantless search or seizure is unreasonable," it is the State's burden to establish "that one of the exceptions to the warrant requirement applied at the time of the search or seizure." Samuel L. Giddens v. State, No. M2006-01938-CCA-R3-PC, 2008 WL 271967, at *3 (Tenn. Crim. App. Jan. 29, 2008) (citing State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). The most common of these exceptions include: (1) a stop and frisk situation; (2) a search incident to a lawful arrest; (3) consent to search; (4) probable cause to search with exigent circumstances; (5) hot pursuit; and (6) plain view. State v. Day, 263 S.W.3d 891, 901 n.9 (Tenn. 2008) (citations omitted). Courts are admonished to keep these recognized exceptions to the warrant rule "'well-delineated,' 'jealously and carefully drawn,' and 'narrowly' defined." Ingram, 331 S.W.3d at 755 (citations omitted).

The first exception to the warrant rule that is relevant to the case at hand, a stop and frisk, requires an officer to have "a reasonable, articulable suspicion that a person has engaged in, or is preparing to engage in, criminal behavior. . . ." State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999). In such a scenario, the police officer is permitted to conduct a limited pat-down search of the person in accordance with the principles of Terry v. Ohio, 392 U.S. 1, 88 S. Ct 1868 (1968), in order to protect the officer's safety. Crutcher, 989 S.W.2d at 300; see also Ingram, 331 S.W.3d at 756. Accordingly, "[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972).

In the case at hand, the first search, in which Officer Sheriff searched the Petitioner for a weapon before placing him in the squad car, was clearly appropriate within the parameters of a Terry stop and frisk. Officer Sheriff had a reasonable, articulable suspicion that the Petitioner had threatened the Petitioner's child's mother with a gun, and Officer Sheriff conducted a limited pat-down for the purpose of ascertaining the presence of a weapon. On the record before us, we do not discern any contention regarding the propriety of the first search.

The next relevant exception occurs when a police officer conducts a search incident to a lawful arrest. An "arrest" is defined in Tennessee law as "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." Ingram, 331 S.W.3d at 757 (citations omitted). A search incident to a lawful arrest is "a contemporaneous search of both the person arrested, and the area into which the arrestee might reach for a weapon or destroy evidence . . . ." Crutcher, 989 S.W.2d at 300-01 (citations omitted). The Tennessee Supreme

Court recently discussed the four conditions that must be met in order to justify a warrantless search incident to a lawful arrest:

> (1) the arresting officer must have probable cause to believe that the defendant had engaged or was engaging in illegal activity, State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999) (holding that a "custodial arrest," which is required to justify a search as incident to arrest, must be "based on probable cause"); (2) the probable cause must attach to an offense for which a full custodial arrest is permitted – i.e., there must be statutory grounds for a warrantless arrest, see Tenn. Code Ann. §§ 40–7–103, 40–7–118(c) (2006); cf. State v. Walker, 12 S.W.3d 460, 467–68 (Tenn. 2000); (3) the arrest must be consummated either prior to or contemporaneously with the search, Crutcher, 989 S.W.2d at 302 n. 12; and (4) the search must be incident to, not the cause of, the arrest. Id. at 302 (observing that "[i]t is axiomatic that a warrantless police search may not precede an arrest and serve as part of its justification"); see Smith v. Ohio, 494 U.S. 541, 543, 110 S. Ct. 1288, 108 L. Ed. 2d 464 (1990); Hughes v. State, 588 S.W.2d 296, 308 (Tenn. 1979) (observing that "no search or frisk 'unlawful at its inception may be validated by what it turns up' ") (quoting Wong Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

State v. Richards, 286 S.W.3d 873, 878 (Tenn. 2009).

### *D. Motion to Suppress*

The Petitioner argues that, following the initial stop and frisk by Officer Sheriff in which no weapons were discovered, he should have been permitted to leave the scene. While not clearly stated in his appellate brief, we discern that the Petitioner finds fault both with his arrest as well as the second search that took place after he was removed from the squad car and which led to the discovery of the illegal drugs in his pants. According to the Petitioner, had trial counsel filed a motion to suppress, the evidence obtained in this search would have been excluded. The State contends that the second search was incident to a lawful arrest and that the illegal drugs would have been inevitably discovered during a more thorough search once the Petitioner was booked.

At the post-conviction hearing, trial counsel stated that he believed filing a motion to suppress in this case would have been frivolous. He explained that the Petitioner was arrested for domestic assault and also had outstanding arrest warrants at the time he was taken into custody. In trial counsel's opinion, the illegal drugs were lawfully discovered incident to the Petitioner's arrest, and he lacked sufficient grounds to file a motion to

-13-

suppress. We have stated previously that "if arguable grounds exist to suppress incriminating evidence, then an attorney, as a zealous advocate for the client, should move to suppress that evidence." Samuel L. Giddens v. State, No. M2006-01938-CCA-R3-PC, 2008 WL 271967, at *6 (Tenn. Crim. App. Jan. 29, 2008) (quoting Steven Bernard Wlodarz v. State, No. E2002-02798-CCA-R3-PC, 2003 WL 22868267, at *6 (Tenn. Crim. App. Dec. 3, 2003)). The importance of a motion to suppress may be of particular importance in a drug case "where the ruling on a motion to suppress is often determinative of the case." Id.

We need not address whether a motion to suppress should have been filed in this case because, after a careful review of the record, we conclude that the Petitioner has failed to establish that he was prejudiced by trial counsel's failure to file such a motion. To meet his burden of showing prejudice, the Petitioner must establish that there is a reasonable probability that, had trial counsel filed a motion to suppress, the motion would have been granted. Id. (citing Strickland, 466 U.S. at 694). Here, the Petitioner has failed to do so. Under the facts of this case, the Petitioner must have adduced sufficient facts to allow the post-conviction court to conclude that the second search was illegal, that is, not undertaken pursuant to one of the exceptions to the warrant requirement. To the contrary, the facts in the instant case do not lead to such a conclusion.

The precise sequence of events surrounding the Petitioner's search and arrest is not entirely clear from the record. According to the affidavit of complaint, Officer Sheriff responded to a woman flagging him down in the street who told him that the Petitioner was "armed with a gun and threatening to hurt her[.]" The woman stated that "the couple had been arguing about custody . . . inside the store when [the Petitioner] grabbed her by the throat." Officer Sheriff testified at trial that, upon arriving at the scene and subduing the Petitioner, he handcuffed him, radioed for backup, performed a pat-down for weapons, and then placed the Petitioner in the squad car. Once backup arrived, Officer Sheriff removed the Petitioner from the squad car and performed a second search, which yielded the drugs in the Petitioner's pants.

The Petitioner surmises that the second search was invalid because after the pat-down yielded no weapons, he should have been permitted to leave rather than being arrested. The Petitioner thus maintains that his Fourth Amendment rights were violated and that a motion to suppress the evidence obtained in the second search would have been granted. However, the proof in the record mandates a different conclusion – that the Petitioner was placed under arrest for domestic assault and that the second search was conducted incident to that arrest.[7]

---

[7]A police officer may effect a warrantless arrest with probable cause to believe that a person has committed misdemeanor domestic assault. See Tenn. Code Ann. §§ 40-7-103(a)(7) (Supp. 2005); 36-3-619

(continued...)

We note in this regard that, in addition to the drug charges, the Petitioner was arrested and charged with domestic assault.[8]  At the time he was handcuffed and placed in the squad car, the Petitioner was "arrested" as that term is defined in Tennessee.  See Ingram, 331 S.W.3d at 757.  Thus, the subsequent search was incident to that lawful arrest.

We recognize that the record is somewhat limited on this issue.  However, the Petitioner bears the burden of proving the alleged prejudice.  In this case, the Petitioner has simply failed to satisfy that burden.  In this regard, we note that Officer Sheriff did not testify at the post-conviction hearing.  This Court recently addressed the evidence necessary at a post-conviction hearing in order to demonstrate that a motion to suppress would have been granted:

> It is well settled that when a Petitioner in post-conviction proceedings asserts that counsel rendered ineffective assistance of counsel by failing to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the post-conviction hearing; otherwise Petitioner asks the Court to grant relief based upon mere speculation.  Black v. State, 794 S.W.2d 752, 757 (Tenn. 1990).  The same standard applies when a Petitioner argues that trial counsel was constitutionally ineffective by failing to file pre-trial motions to suppress evidence.
> . . . .
> In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing. On issues such as the ones in the case *sub judice*, it is likely a rare occasion indeed when the testimony of only the Petitioner and the trial counsel could provide proof of the merit of a suppression motion based upon a warrantless search.

Terrance Cecil v. State, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011) (no Tenn. R. App. P. 11 perm. app. filed).

The Petitioner's proof in this case fails for similar reasons.  Because the search of the Petitioner was not at issue at trial or on direct appeal, the record was not fully developed on that issue at those stages.  Consequently, it was incumbent on the Petitioner to establish an adequate record at his post-conviction hearing upon which this Court could determine the

---

[7](...continued)
(2005).

[8]As discussed above, the Petitioner also had outstanding arrest warrants at the time he was taken into custody.

likelihood of success of a motion to suppress. The testimony of only the Petitioner and trial counsel was not sufficient to provide such a foundation for review. Testimony from other witnesses to the Petitioner's search and arrest, including Officer Sheriff, was necessary in this case to establish the factual circumstances from which this Court could conclude that a motion to suppress would have been granted. Without evidence to the contrary, the record presented by the Petitioner does not establish that a motion to suppress would have been successful. Therefore, the Petitioner has failed to prove that he was prejudiced by trial counsel's failure to file such a motion.

As a final matter, we note that the State argues that a motion to suppress would have been unsuccessful based upon the doctrine of inevitable discovery, and the trial court in part relied upon this reasoning in denying post-conviction relief. According to the doctrine of inevitable discovery, "illegally obtained evidence will be deemed admissible at trial if the State can establish that the evidence would have inevitably been discovered by lawful means." State v. Hill, 333 S.W.3d 106, 123 (Tenn. Crim. App. May 12, 2010), perm. app. denied, (Tenn. Oct. 12, 2010) (citing State v. Patton, 898 S.W.2d 732, 735 (Tenn. Crim. App. 1994) (citing Nix v. Williams, 467 U.S. 431, 104 S. Ct 2501 (1984))). Inevitable discovery is a distinct concept from a search incident to a lawful arrest and may permit the admission of evidence obtained outside the parameters of the enumerated exceptions to the warrant rule. See generally Patton, 898 S.W.2d at 735. Because we have already concluded that the Petitioner has not met his burden in this case, we deem it unnecessary to address whether the doctrine of inevitable discovery would also bar the Petitioner from the relief he seeks.

### III. **Conclusion**

Based upon the record before us, the Petitioner has failed to prove that there is a reasonable probability that a motion to suppress would have been granted. Consequently, he has failed to prove that he was prejudiced by his trial counsel's failure to file such a motion. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE